**SANDERS CONFECTIONERY PRODUCTS, INC., a Michigan corporation; John M. Sanders; Filipp J. Kreissl, Plaintiffs–Appellants (90–2039),**

**Sam J. Merigian, on behalf of himself and all persons who were shareholders of Sanders Confectionery Products, Inc., as a Class Action Under FRCP 23(a) and 23(b), Plaintiff–Appellant (90–2040),**

v.

**HELLER FINANCIAL, INC., a Delaware corporation; Butzel, Keidan, Simon, Myers & Graham, a partnership; John W. Butler, Jr.; Jay Alix, Defendants–Appellees.**

Nos. 90–2039, 90–2040.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 19, 1991.

Decided Aug. 17, 1992.

476

Richard L. Roble (argued and briefed), Savanah, Ga., for Sanders Confectionery Products, Inc., John M. Sanders and Filipp J. Kreissl.

Susan Artinian, Dykema & Gossett, Detroit, Mich., Timothy J. Rivelli, Daniel K. Webb (argued and briefed), Winston & Strawn, Chicago, Ill., for Heller Financial, Inc., Butzel, Keidan, Simon, Myers & Graham, and John W. Butler, Jr.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Robert J. Diehl, Jr., David G. Chardavoyne, Michael B. Lewiston (argued and briefed), Bodman, Long & Dahling, Detroit, Mich., for Jay Alix.

Joseph L. Hardig, Jr. (argued and briefed), Hardig & McConnell, Bloomfield Hills, Mich., for Filipp J. Kreissl in No. 90–2040.

Before: NELSON and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Plaintiffs Sanders Confectionery Products, Inc., John M. Sanders, and Filipp J. Kreissl appeal from the district court's dismissal of their lender liability claims against Heller Financial, Inc., Butzel, Keidan, Simon, Myers & Graham, John W. Butler Jr., and Jay Alix. Plaintiff Sam J. Merigian appeals from the dismissal of his RICO and securities fraud claims against Heller Financial, Inc.[1] All of the plaintiffs claim the district court erred in holding that the earlier bankruptcy proceedings of Fred Sanders, Inc. barred these actions under the doctrine of *res judicata*. Merigian claims the district court erred in failing to recognize Heller's liability as a control person under section 12(2) of the 1933 Securities Act and as an aider and abettor in violation of section 10(b) of the 1934 Securities Act. This case also presents questions concerning causation and standing to bring a RICO claim. We affirm the district court's dismissal of the actions by Sanders Confectionery Products, Inc., Sanders, Kreissl, and Merigian.

I.

In late 1985, Filipp J. Kreissl, president of Sanders Confectionery Products, Inc. (SCPI), approached Heller Financial, Inc. (Heller) about obtaining financing for Fred Sanders, Inc. (FSI). SCPI was the parent company of FSI, a 117 year old company famous in southeastern Michigan for its hot fudge and chocolate candies. FSI had recently emerged from bankruptcy protection and sought to expand its operations. In a February 15, 1986 loan agreement, Heller agreed to provide up to $2.45 million to the candy manufacturer.

In July 1986 the relationship between Heller and FSI began to sour. Heller declared events of default, accelerated the loan and stopped funding. As a cure, Heller demanded loan guarantees from SCPI, Kreissl and SCPI's chairperson, John M. Sanders, a release of cure period rights, a "blocked account" for cash collections, and increased interest rates. The borrowing formula was to remain unchanged. FSI acceded to these demands in order to obtain much needed funds to begin building an adequate Christmas inventory.

Seeking more cash, and hoping to draw on its good reputation in Detroit, SCPI began preparing a stock offering in December 1986. On December 9, 1986, Heller certified that FSI was a borrower in good standing. However, after SCPI issued the prospectus, Heller found defaults in the payment of state and federal taxes. To avoid changing the prospectus, FSI requested a waiver of these defaults by Heller. Heller conditionally agreed, upon a grant of further concessions by FSI.

Throughout this period, FSI sought changes in the lending formula as part of

---

1. Originally, Merigian joined in all of the actions against all of the defendants, but has since dropped the claims against all defendants except Heller Financial. The district court denied his motion to separate his claims from those of the other plaintiffs.

an effort to obtain additional funds. Finally, on or about February 17, 1987, Heller orally agreed to loan FSI an additional $750,000 if the public offering raised at least $1,000,000. The public offering, completed in May 1987, raised $5,000,000. Heller never made the additional funds available.

On February 18, 1987, FSI received a letter from Heller declaring more events of default. FSI once again cured the default. FSI also obtained more funds through a $600,000 loan from First Independence Bank. Heller represented to First Independence that FSI was a borrower in good standing, but upon execution of the note Heller made additional demands. It required payment of $120,000 from this loan, double its original demand, and accelerated the maturity date of its loan by eight months.

In August 1987, the state of Michigan issued another tax lien, this time in error. First Independence and Heller declared and then rescinded events of defaults. Heller also closed its Michigan office, an event planned since at least May 1987. At this time Heller told FSI that small business loans no longer fit its plans, and informed FSI it should seek financing elsewhere.

Heller initially denied FSI a Christmas inventory loan, but in October offered one when FSI could not procure a loan from other sources. FSI prepared a debt offering for fall 1987, but the stock market crash delayed it. FSI remained cash hungry.

On November 5, 1987, Heller sent FSI another letter of default, and declared it would continue stop-gap financing on an absolutely discretionary basis. On November 9, FSI requested an additional $450,000 for Christmas needs. Heller promised to do everything it could, but then failed to attend a November 13 meeting on the topic. Instead, Heller foreclosed on its loans. The next day, Heller demanded FSI file for Chapter 11 protection and execute new loan agreements. FSI filed for bankruptcy on November 16, 1987.

On November 18, 1987, FSI sought authorization to borrow more money from Heller. See 11 U.S.C. § 364. The post-petition agreement gave discretionary financing to the Debtor (FSI) while waiving all claims, setoffs or defenses of FSI, SCPI, Sanders and Kreissl against Heller. The bankruptcy court entered a Consent Financing Order approving the post-petition agreement and ratifying the pre-petition agreements. Neither SCPI, Sanders nor Kreissl signed the Consent Order, but they were party to and guarantors of the post-petition loan agreement.

On December 4, 1987, the bankruptcy court approved Jay Alix as the trustee for the debtor-in-possession. See 11 U.S.C. § 1104. Heller and the unsecured creditors' committee had moved for Alix's appointment. Neither SCPI nor FSI opposed his appointment as trustee, although earlier they had rejected him as an examiner.

Alix, the Creditors' Committee and another FSI creditor, Michigan Strategic Fund, objected to the Consent Financing Order. Alix claimed the terms of the agreement made it impossible to operate without being in default and that the agreement gave Heller too much control. The bankruptcy court conducted several hearings between December 21, 1987 and January 7, 1988. The court then entered an order amending the Consent Financing Order.

The amended order determined that Heller's claims under the pre-petition loan agreements were valid and not subject to any claims, set-offs or defenses of FSI. It also confirmed the superpriority status of Heller's secured claims. See 11 U.S.C. § 364. The amended order expressly provided, "all parties in interest in this Proceeding, or any further or future proceeding whether under [any provision of the bankruptcy laws], are forever barred from prosecuting any actions or filing any claims against [Heller] arising or related to the Financing Arrangements...."

Finally on May 4, 1988, the court approved a plan offered by FSI's employees' union, United Distributive Workers Council 30, for the purchase of FSI's assets by Country Home Bakery, Inc. SCPI, Sanders and Kreissl participated in the plan

process and did not object to the plan. Under the plan, Heller was paid the full amount of its allowed claims.

In 1989, SCPI, Sanders, Kreissl and Sam J. Merigian, a shareholder of SCPI,[2] sued Heller, Butzel, Keidan, Simon, Myers & Graham, Heller's attorneys, John W. Butler, a partner in the Butzel firm, and Alix. The complaint contained thirteen counts alleging, among other things, common law fraud, RICO violations, and securities law claims. The district court dismissed all of the claims as barred on *res judicata* grounds, based on the bankruptcy case of Fred Sanders, Inc. *See In re Fred Sanders, Inc.,* Case No. 87–06979–B (Bkrtcy. E.D.Mich. May 1, 1988).[3] The court also held that Merigian failed to state a claim upon which relief may be granted. SCPI, Sanders and Kreissl appeal as to the dismissal of their claims against all defendants. Merigian appeals only from the dismissal of the securities claims against Heller.

## II.

The district court dismissed all of the claims by all of the plaintiffs on *res judicata* grounds. We review *de novo* district court dismissals of cases on *res judicata* grounds. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658 (6th Cir.1990).

Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources. *See Federated Department Stores v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). *Res judicata* should not be confused with collateral estoppel or issue preclusion. This latter doctrine only "preclude[s] relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo,* 918 F.2d at 661. In contrast, *res judicata,* or claim preclusion, has four elements:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action

*King v. South Cent. Bell Tel. & Tel. Co.,* 790 F.2d 524 (6th Cir.1986); *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224 (6th Cir.1981).

■ Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458 (6th Cir.1991); *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358 (5th Cir.1972); *see also* 11 U.S.C. § 1141(a) (outlining preclusive effect of confirmed plan). The bankruptcy court issued an order confirming a bankruptcy plan in the FSI bankruptcy in 1988, constituting a final judgment on the merits by a court of competent jurisdiction.

■ SCPI, Sanders and Kreissl contend that none of the other elements of *res judicata* has been met as to their claims. They argue that they were not a party, or in privity with a party in the bankruptcy for *res judicata* purposes. They assert that the only party to the FSI bankruptcy for *res judicata* purposes was the debtor FSI and that, while SCPI owned FSI, the two retained separate corporate identities and SCPI could not be considered a party to the bankruptcy.

■ We believe this definition of party and privies narrows the effect of a bankruptcy order too far. Other entities, such

---

**2.** The court denied Merigian's attempt to gain class certification to represent all shareholders.

**3.** SCPI, Sanders and Kreissl argue that this 12(b)(6) motion should have been treated as a motion for summary judgment because the court considered "attachments to the pleading" in the form of the bankruptcy orders. Under either of these motions the court would have been entitled to take judicial notice of the prior bankruptcy proceeding.

as creditors and equity security holders in the debtor, must also be considered parties for *res judicata* purposes. The Bankruptcy Code contains a strong preference for final resolution of all claims involving the debtor, largely in order for the debtor to obtain a fresh start. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). To release creditors and equity security holders from the bonds of *res judicata* would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor. To interpret the term "party" narrowly would also run counter to the provisions in the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders. *See, e.g.*, 11 U.S.C. §§ 1141, 1144.

■ SCPI, Sanders and Kreissl all fit within an expanded definition of party. SCPI owned one hundred percent of the stock in FSI. In fact, FSI was SCPI's sole asset. Sanders filed a claim in the bankruptcy proceeding as a creditor. Both Sanders and Kreissl acted as personal guarantors of the Heller loan, making them both creditors of FSI as well. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1551 (11th Cir.), *cert. denied* — U.S. —, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). Similarly, Heller, Butzel and Butler would all qualify as parties to the bankruptcy because of their claims as creditors. Likewise, Alix as trustee for FSI is certainly a party to the proceeding.

■ The shareholder in SCPI, Merigian enjoyed a more distant relationship with FSI. He was neither an equity security holder in FSI, nor a creditor. Any relation he had to the FSI bankruptcy was through SCPI. Consequently, Merigian could not be considered to be a direct party to the proceeding.

■ *Res judicata* also bars those in privity with parties from bringing suit later. Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented. *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir.1990). Sanders was the chairperson of the boards of both FSI and SCPI; Kreissl was president of both companies. These positions of power allowed them to control the actions of FSI and SCPI. *See In re Teltronics Services, Inc.*, 762 F.2d 185 (2nd Cir.1985).

■ The district court found Merigian to have been in privity with SCPI because his interests were adequately represented by SCPI. The adequacy of representation is a factual matter for the district court. *King v. South Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524, 530 (6th Cir.1986) (adequacy of representation in class action). Relying on *Amalgamated Sugar Co. v. NL Industries, Inc.*, 825 F.2d 634 (2nd Cir.), *cert. denied sub nom. Rothenburg v. Amalgamated Sugar Co.*, 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987), the district court held that "the board of directors of SCPI owed a fiduciary duty to represent Merigian and the other shareholders and, absent bad faith, collusion, or negligence by the board, the stockholder is deemed adequately represented." The district court made no other factual examination of the adequacy of representation.

In *Amalgamated Sugar*, one shareholder in NL Industries brought an action in state court for a declaration of the validity of a "poison pill" stock purchase plan. A few weeks earlier the same plan had been challenged by Amalgamated Sugar and two other companies in an action brought against NL Industries and its directors in federal court. The federal court entered a consent judgment permanently enjoining implementation of the stock plan, and a few days later the court also enjoined the state proceedings. The Second Circuit upheld the injunction on *res judicata* grounds, but only after noting that "a finding of privity between a shareholder and the corporation depends on whether, under the circumstances, the interests of the nonparty were adequately represented." *Amalgamated Sugar*, 825 F.2d at 640. NL Industries adequately represented the interests of the shareholder because he had

no interest in the plan different from the directors. *Id.* at 641.

In this case, the district court failed to inquire into the particular circumstances of the case, and chose instead to apply a "bright line rule" for representation. This was error. Merigian's claims against Heller do not correspond with those of SCPI. Merigian argues that Heller as the control person of SCPI failed to make the necessary disclosures in relation to the issuance of SCPI stock. Only Merigian as a stockholder, not SCPI, could make this claim. Therefore, SCPI could not adequately represent Merigian's interests against Heller under this theory, and the FSI bankruptcy does not bar this action by Merigian.

The third element of *res judicata* prohibits parties from bringing claims they have already brought or should have brought. SCPI, Sanders and Kreissl first contend that their lender liability claims could not have been brought in the bankruptcy court because the court would have lacked subject matter jurisdiction. *See* 28 U.S.C. §§ 157, 1334. They believe that because bankruptcy courts only have subject matter jurisdiction over core proceedings, a final judgment by a bankruptcy court is *res judicata* only as to core proceedings.

■ Three courts of appeals have considered this argument. Both the Fifth and the Seventh Circuits have held that decisions in bankruptcy cases act as a bar only to core proceedings. *Barnett v. Stern,* 909 F.2d 973 (7th Cir.1990); *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183 (5th Cir.1990). More recently, the Second Circuit held that whether or not a claim was a core proceeding had no bearing on its preclusion. *Sure–Snap Corp. v. State St. Bank and Trust Co.,* 948 F.2d 869 (2nd Cir.1991). We agree with the Second Circuit that in certain circumstances bankruptcy proceedings can also be binding on non-core proceedings.

■ The jurisdiction of federal district courts in bankruptcy matters is set out at 28 U.S.C. § 1334:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b); *see also,* 28 U.S.C. § 1334(a) (granting jurisdiction over the bankruptcy petition itself). To fall within the bankruptcy jurisdiction of a district court, a proceeding need only be "related to" a case under title 11. *In re Wolverine Radio Co.,* 930 F.2d 1132, 1142 (6th Cir. 1991). A matter is related to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id., quoting In re Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis omitted). The matter need not directly involve the debtor, as long as it "could alter the debtor's rights [or] liabilities," but an "extremely tenuous connection" will not suffice. *In re Wolverine Radio,* 930 F.2d at 1142.

■ The claims brought by SCPI, Sanders and Kreissl would all qualify as proceedings "related to" the FSI chapter 11 case. They based their lender liability, securities fraud, RICO, bankruptcy fraud, and conspiracy claims against the Heller defendants and the bankruptcy trustee Alix on the same facts the bankruptcy court considered in determining the validity of Heller's secured claim against the FSI bankruptcy estate. Heller's claim, unlike those of other FSI creditors, was fully paid. Consequently, a successful action on the SCPI plaintiffs' part could have affected the outcome of the bankruptcy proceeding by calling into question the validity of Heller's claim and possibly resulted in the removal of Alix as the trustee. Thus, despite the absence of FSI as a formal party to this action, these claims would have been within the district court's subject matter jurisdiction over bankruptcy cases.

If a district court has bankruptcy jurisdiction over a case, 28 U.S.C. § 157(a) allows the court to refer the case to the bankruptcy court. 28 U.S.C. § 157(a). Bankruptcy judges "may hear and determine all cases under title 11 and all core

proceedings arising under title 11, or arising in a case under title 11 ... and may enter appropriate orders and judgments...." 28 U.S.C. § 157(b)(1).

The bankruptcy judge rules on whether a particular proceeding is a core proceeding. 28 U.S.C. § 157(b)(3). The court looks at both the form and the substance of the proceeding in making its determination. *In re Wolverine Radio*, 930 F.2d at 1144; *In re Wood*, 825 F.2d 90 (5th Cir.1987). A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy. *Id.* In non-core proceedings that are "related to" the bankruptcy case, the bankruptcy judge may hear the matter and "submit proposed findings of fact and conclusions of law to the district court," but without the parties consent the bankruptcy court may not make a final decision on the matter. 28 U.S.C. § 157(c).

Although the bankruptcy court would not have subject matter jurisdiction over a non-core related proceeding, the action would still be within the district court's jurisdiction. The Fifth and Seventh Circuits overlooked this ability of the district court to issue a necessary decision in a related matter in their decisions that *res judicata* bars only core proceedings. *See Barnett v. Stern*, 909 F.2d 973 (7th Cir.

1990); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir.1990). While the bankruptcy court could not make a final decision in a non-core proceeding, absent the consent of the parties, it could hear the matter and refer it to the district court. Through its bankruptcy jurisdiction, the district court could decide the claim, allowing for a correct adjustment of the relations between all of the parties. Therefore, a confirmed plan in a bankruptcy case may operate to bar both core and non-core proceedings.[4]

The SCPI plaintiffs next argue that they could not have brought their claims in the bankruptcy proceeding because the claims did not involve the debtor. Generally, bankruptcy jurisdiction does not extend to actions between third parties because the action would not be "related to" a bankruptcy proceeding. For example, a bankruptcy court would not hear a case between two creditors based on their prior dealings independent of the debtor. In contrast, as detailed above, if this case had been brought during the bankruptcy proceedings it would have affected the bankruptcy estate. Therefore, the SCPI plaintiffs could have brought this action in the prior proceeding, and have offered no justification for their failure to do so.

*Res judicata* also requires an identity of claims. SCPI, Sanders and

---

**4.** The SCPI plaintiffs never submitted this claim to the bankruptcy court, so the bankruptcy judge never determined whether they constituted core proceedings. The district court in this case, however, did hold that the claims were core proceedings:

claims challenging the conduct of the trustee in the administration of the estate, challenging the validity of Heller's pre-petition claims against the estate, Heller's conduct as post-petition lender pursuant to the consent financing orders, the propriety of liquidation versus reorganization of the debtor and allegation of fraud on the bankruptcy court ... are all core proceedings....

The district court then alluded to the jurisdiction of bankruptcy court over non-core proceedings, but failed to mention which proceedings were non-core and to note the limited nature of the bankruptcy court's jurisdiction in these matters.

None of SCPI, Sanders or Kreissl's claims could be considered to "arise under title 11"

because the causes of action are not created or determined by a statutory provision of title 11. *See In re Wolverine Radio*, 930 F.2d at 1144. Likewise, the lender liability, common law fraud, securities fraud, and RICO claims against Heller, Butler and Butzel are not ones which "arise in" a title 11 case because they could arise in cases other than bankruptcy proceedings. *See id.* Therefore, despite their possible affect on the bankruptcy estate of FSI, the district court incorrectly classified them as core proceedings rather than as non-core related proceedings.

The claims against the trustee Alix, however, would be core proceedings. While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not. All claims against Alix related to his conduct during the FSI bankruptcy, and should be considered core proceedings.

Kreissl incorrectly contend that because these particular claims were not raised in the prior action, no identity of claims exists. Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir.1981). All of the claims in this action are based on Heller's behavior in making and administering its loan to FSI. The bankruptcy court considered this same behavior by Heller in its numerous rulings on the validity of Heller's claims against FSI. Therefore, these claims are identical and all of the elements of *res judicata* have been met.

 SCPI, Sanders and Kreissl make one final argument supporting their action. They insist that only compulsory counterclaims are barred by *res judicata*.[5] *See* Bankr.R. 7013; Fed.R.Civ.P. 13. SCPI's bases this argument largely on a Fifth Circuit case, *D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36 (5th Cir. 1989). In *D–1 Enterprises*, the court of appeals allowed a debtor to bring a lender liability action after the district court entered an agreed order lifting the automatic stay and abandoning the debtor's property to the lender. The court's decision rested largely on the limited nature of the automatic stay proceedings. *Id.* at 38–39. The summary nature of the proceedings was inappropriate for dealing with "indirect defenses" such as fraud. The court found additional support for its position in the compulsory counterclaim provisions of the Code, finding that "[i]t would be odd indeed if a claim that was not required as a compulsory counterclaim by the Bankruptcy Rules and in fact could not be litigated as a defense to the motion for relief from the stay was nonetheless barred by *res judicata*." *Id.* at 39. Thus, the ruling in *D–1 Enterprises* rested largely on the limited nature of the proceedings to lift the automatic stay, not on whether a particular claim was a compulsory counterclaim.

Subsequent cases in the Fifth Circuit support this interpretation of *D–1 Enterprises*. In its recent decision in *In re Howe* (*Howe v. Vaughan*), 913 F.2d 1138 (5th Cir.1990), the court stated, "[t]he *D–1 Enterprises* court merely decided that when a claim cannot be litigated effectively, it is not precluded." *Howe*, 913 F.2d at 1146; *see also, Hendrick v. Avent*, 891 F.2d 583 (5th Cir.), *cert. denied*, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990) (distinguishing *D–1 Enterprises* from *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) on the basis of the limited nature of the proceeding in *D–1 Enterprises*). In *Howe*, the debtors had listed their lender as a creditor and had the opportunity to be heard in the proceedings. This prompted the court to hold "that when a confirmed plan discloses and specifically treats the creditor's claim in an adversary proceeding that is, in effect, settled in the plan, the debtor cannot collaterally attack the bankruptcy court's decision five years later in an action based on the same transaction." *Howe*, 913 F.2d at 1147; *see also Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984) (President and 25% stockholder of the debtor (Craig) cannot bring lender liability claim against creditor three years after final sale in Chapter X bankruptcy).

As these cases point out, what is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action. A number of adversary proceedings, culminating in an order confirming a reorganization plan, determined the rights of the parties to the FSI bankruptcy. The court conducted these proceedings to resolve all of the claims currently owed by the debtor in order to discharge its debts. The confirmation order resulted in a plan paying Heller's claim against the estate in full as an unimpaired secured creditor. The claim asserted by SCPI, that Heller obtained its favored position through illegal practices, runs counter to the bankruptcy court's determination. Accordingly,

---

5. Since these claims arise from the same core of operative facts as the bankruptcy, they would be considered compulsory counterclaims.

these claims of SCPI, Sanders and Kreissl should have been brought during the bankruptcy proceeding, and *res judicata* prevents them from being raised now.

### III.

■ The district court dismissed Merigian's securities claims for failure to state a claim for which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). The court held that Heller, being neither a seller nor an active participant in the offering, owed no duty to disclose to the purchasers of SCPI stock, and so could not be held liable under either section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l, or section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); 17 C.F.R. 240.-10b–5. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). We review *de novo* dismissals under Rule 12(b)(6). *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990).

Merigian argues, however, that the district court's holding ignored Heller's potential liability as a "controlling person" of SCPI, *see* 15 U.S.C. §§ 77o, 78t, and this claim forms the crucial argument in his appeal. A "controlling person" shares the liability for violations of securities laws with the primary violator it controlled. *Id.* If Heller controlled SCPI and SCPI violated its duty to disclose, then Heller could also be held liable as a "controlling person." Additionally, Merigian claims the court neglected to consider Heller's liability for "aiding and abetting" SCPI's violation of section 10(b) and Rule 10b–5.

Heller contends the district court did not ignore these potential avenues of liability, but rather Merigian failed to adequately plead any of these causes of action. Since Heller did not offer or sell SCPI stock, section 12(2) could not apply to it unless it

"controlled" SCPI. *See* 15 U.S.C. 77l. By holding that Heller was not an offerer or seller, the district court implied that Merigian had failed to plead sufficiently Heller's control over SCPI. According to Heller, Merigian failed either to allege any control relationship between Heller and SCPI or to allege sufficient acts of control over SCPI by Heller to make it a "controlling person."

The 78 page amended complaint does not contain a specific allegation of control over SCPI by Heller. In two paragraphs, Merigian contends that the financing agreement between FSI and Heller gave Heller control over FSI. Of course, SCPI, not FSI, sold the stock in question. Merigian claims that these references to Heller's control over FSI are essentially typographical errors. The complaint really should be read as stating that the loan agreements with FSI gave Heller control over SCPI. Merigian argues this reading becomes apparent upon examination of the remainder of the complaint. Merigian points to a number of paragraphs which simply assert Heller's status as a control person, and continue to allege violations of the securities laws by SCPI. Contrary to Merigian's assertions, these paragraphs do not support a conclusion that the earlier paragraphs mistakenly alleged control over FSI rather than SCPI. At best, the complaint could be read as implying that control over FSI equalled control over SCPI.[6] A generous reading of the complaint, we believe, suffices to adequately allege Heller's status as a control person under section 15 of the 1933 Act, 15 U.S.C. § 77o.

■ Where Merigian's complaint fails is in its allegations of a control relationship. While normally Heller's status as a control person would be a question of fact, the allegations of the complaint here are unusually explicit and enable us to conclude as a matter of law that as to Merigian, Heller was not such a control person and further that Merigian, even if allowed to amend, could not plead or prove sufficient

---

**6.** This implication of control would be consistent with our finding that SCPI's actions here are barred by *res judicata*.

facts to support a contrary conclusion or raise a factual issue concerning it.

Our circuit has not adopted a test for liability as a "controlling person" under the securities laws, although other circuits have considered the issue, with slightly conflicting results. *See, e.g., Orloff v. Allman,* 819 F.2d 904, 906 (9th Cir.1987); *Metge v. Baehler,* 762 F.2d 621 (8th Cir. 1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). We find it unnecessary to choose between the various tests suggested because Merigian failed to plead sufficient acts of control under the least rigorous standard applied in *Metge.*

*Metge* established a two-prong test for control person liability. The plaintiff needs to establish "that the defendant lender actually participated in (i.e., exercised control over) the operations of the [borrower/violator] in general ... [and] that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated." *Metge,* 762 F.2d at 631. In *Metge,* the lender alleged to occupy a control person role had acquired substantial additional powers beyond a simple security interest in property. The lender held nearly 20% of the borrower's stock, held a proxy on a controlling interest of the borrower's subsidiary, had power over the borrower's policy regarding capital stock, bank personnel attended board meetings, and it influenced the borrower's debt structure. *Metge* at 631. Despite all of this power, the Eighth Circuit held that the facts suggested only the potential for control, not actual control. *Metge* at 632.

■ Similarly, Merigian only alleged participation in the specific activity without attempting to establish broader actual control. The complaint states that Heller participated in the development of the prospectus by complying with SCPI's due diligence requirement and making disclosures concerning the FSI loan and that Heller "controlled" the information it gave to SCPI. Nowhere does Merigian claim that Heller "actually participated in the operations" of SCPI, other than by making secured loans. Extending a loan to a company and taking

measures to secure that loan do not amount to actual control. *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 949 (7th Cir.1989). Therefore, Merigian's complaint failed to make out a claim under either of the "controlling person" statutes, 15 U.S.C. §§ 77o, 78t.

■ The district court also found correctly that Merigian's complaint failed to make out a claim for aiding and abetting liability under section 10(b) and Rule 10b–5 against Heller. A claim of aiding and abetting under these sections requires allegations that the accused party knowingly and substantially assisted another party's violation of the securities law, and that the accused had a general awareness that it was participating in an overall improper activity. *Moore v. Fenex, Inc.,* 809 F.2d 297 (6th Cir.), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). Thus, Heller could be held liable as an aider and abettor only if SCPI violated section 10(b).

■ Merigian failed, however, to allege adequately SCPI's commission of a violation of section 10(b) and Rule 10b–5. Generally, damage claims under this section and rule require "1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale of 5) a security 6) causing 7) damages." *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485 (6th Cir.1990) *quoting Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1026 (6th Cir.1979). Here, Merigian failed to allege that SCPI acted with scienter, "an intent to deceive, manipulate or defraud." *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). Instead, Merigian claims that SCPI did not know of Heller's "scheme" to deny funding and send SCPI into bankruptcy. Therefore, SCPI could not have acted intentionally when it failed to reveal the information about Heller's plans for its future, and so SCPI lacked the requisite scienter to be guilty of a section 10(b)/Rule 10b–5 violation. Consequently, Heller could not be

liable under a secondary theory of liability regardless of its level of knowledge.

■■■■ The failure to establish Heller's status as a control person also destroys the shareholder's RICO claims. RICO contains a proximate cause requirement. *Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The district court found this to be lacking because a shareholder does not suffer a direct personal injury when the damage alleged is diminution or destruction of the value of the stock. *Gaff v. FDIC,* 814 F.2d 311 (6th Cir.1987); *Warren v. Manufacturer's Nat'l Bank,* 759 F.2d 542 (6th Cir.1985). When the acts alleged lower the corporation's value, the corporation suffers the direct injury, and the shareholders suffer as a result because their investment is worth less. The bankruptcy fraud alleged also constitutes such an indirect injury. As the Supreme Court recently explained, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [generally stands] at too remote a distance to recover." *Holmes* at 1318.

Merigian alleged (insufficiently however) an additional act beyond the mere diminution of the stock's value. He also claimed that Heller through SCPI failed to disclose material facts in an issuing prospectus. Relying on the false prospectus, Merigian bought valueless stock. Thus, in the abstract, this second act of issuing a misleading prospectus could have proximately caused Merigian's injury.

Where Merigian's complaint goes awry, however, is in the establishment of the necessary predicate acts. 18 U.S.C. § 1961(5) requires at least two predicate acts underlying RICO claims. Merigian alleged four: securities fraud, bankruptcy fraud, and mail and wire fraud in the perpetration of the other two acts. As we explained above, Heller could not be held liable for violations of the securities laws by SCPI. Furthermore, the claimed acts of bankruptcy fraud did not proximately cause injury to Merigian as forcing a company into bankruptcy directly injures only the company. Likewise, the mail and wire fraud claims could not support a RICO action because they are based on the securities and bankruptcy fraud claims we just found inadequate to support a RICO action, and offer no closer connection to any of the parties than the substantive claims did. Therefore, lacking any predicate acts on which to base the RICO claim, the district court's dismissal of the RICO claim was also proper.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of the claims against Heller, Butzel, Keidan, Simon, Myers & Graham, John Butler, Jr. and Jay Alix.