Charles S. BITTINGER, Individually, and as a Representative of those Similarly Situated, A Class, Plaintiff,

v.

TECUMSEH PRODUCTS COMPANY and Tecumseh Division Group Insurance Plan for Retirees, Defendants.

No. 94–CV–72283–DT.

United States District Court, E.D. Michigan, Southern Division.

Jan. 19, 1996.

Ann Thompson, Detroit, MI, for plaintiff.

Diane M. Soubly, Detroit, MI, for defendants.

### *OPINION*

DUGGAN, District Judge.

Before this Court is defendants' motion for summary judgment or dismissal on claim preclusion grounds. Defendants claim that the interests of plaintiff Bittinger and the members of his class were adequately represented by the plaintiffs in an earlier lawsuit before this Court, *Spaulding v. Tecumseh Products Co.*, No. 91–CV76009–DT (E.D.Mich. Jan. 22, 1993). This Court agrees with defendants and holds that res judicata bars plaintiff Bittinger and his class from pursuing this action.

### I. Background

Plaintiff Bittinger and his class are all retirees of defendant Tecumseh Products Company ("Tecumseh"). At all relevant times, a series of collectively bargained labor agreements were in existence between Tecumseh and plaintiffs' former union, the United Products Workers Union. The agreements included provisions governing medical, health and life insurance benefits available to retiring union employees. Plaintiffs contend that the labor contracts, plan descriptions

given to employees at the time of retirement and representations made by Tecumseh personnel establish that the retirement benefits were to be company-paid until the death of the retiree.

According to defendants, the CBA's as well as various other literature contain unambiguous language stating that the retiree insurance benefits were not lifetime benefits, but were instead subject to change. Defendants contend that the retiree benefits expired by the terms of the last labor agreement which expired on May 15, 1991.

Defendants argue that the history of their interaction with the plaintiffs also supports the contention that the benefits never were to be for the life of the retiree. Before any bargaining session, defendants had an expert cost out the cost of providing health benefits for retirees. On each occasion, the expert only calculated the cost of providing benefits for the term of the new contract.

Defendants also argue that the 1984–1988 CBA actually reduced some insurance benefits which further supports their contention that they had the right to change retiree benefits. Plaintiffs respond that the retiree benefits were continually paid in full during two earlier strikes and that this is evidence of defendants' intent to provide lifetime health benefits to retirees. Defendants deny having paid benefits during any strike and argue if they had, it was in error and contrary to a long-standing company policy.

Upon expiration of the 1988–1991 CBA, retirees were notified that the life insurance and medical coverage provided by Tecumseh "terminated as of May 16, 1991 because of the strike"; that retirees had the option of temporarily continuing their medical coverage by electing to pay required monthly premiums; and that if they wished, they could convert their life insurance policy to an individual policy.

In June of 1991, retirees were notified that when the 1988–1991 CBA expired, "Tecumseh hourly retiree insurance benefits expired"; that the new labor contract between the Union and the Company did not provide for retiree insurance benefits; that Tecumseh "decided, without legal obligation and completely on its own, to offer life, hospital, medical, and surgical benefits" to retirees "under a new retiree group insurance plan for an indefinite period of time"; and that under the new plan Tecumseh "reserved the right, in its sole discretion, to amend, modify, change, reduce, cancel, or discontinue at any time the group plan, the retiree insurance benefits provided under the group plan, and the portion which it pays for those benefits." Retirees were given the option of accepting the "unilaterally provided insurance benefits ... in lieu of and in full settlement of any and all claimed obligations," of Tecumseh "to provide retiree insurance benefits." See Letter to Tecumseh Hourly Retirees of June 19, 1991, attached as Ex. 5 to Pl's. App. I. Class representative Bittinger as well as numerous other members of the purported class signed these releases.

### The *Spaulding* litigation

The hourly retirees called a mass meeting on June 5, 1991 which was attended by 500 retirees. The purpose of the meeting was to form a retiree organization to seek legal advice and action regarding their retirement benefits. The retirees named the group the Unified Tecumseh Products Hourly Retirees ("UTPHR") and elected officers. The retirees incorporated the organization for the explicit purpose of obtaining legal advice and action. See UTPHR Articles of Incorporation, attached as Ex. 1 to Defs'. Rep. Br. The UTPHR collected money from its members to support the *Spaulding* litigation. See Defs'. Ex. 23. Plaintiff Bittinger contributed twenty dollars several times with the understanding that the money would defray the cost of a *Spaulding* law suit. Bittinger Dep. at 85, 103.

After one attorney turned them down, the group obtained legal representation. The UTPHR board authorized by resolution that Spaulding, Carroll and Bishop would be the class representatives. The board also authorized the attorney to exercise discretion in pursuing the *Spaulding* lawsuit. The *Spaulding* complaint was filed on November 13, 1991.

The UTPHR sent a newsletter to its members, which Bittinger received, announcing that a law suit had been filed and requesting

more money as well as affidavits. Defs'. Ex. 26. Besides supplying money on a few occasions, Bittinger also supplied an affidavit. Defs'. Ex. 27.

On January 22, 1993, this Court issued an Order Granting Summary Judgment and Dismissing Plaintiffs' Complaint In Its Entirety With Prejudice. The *Spaulding* plaintiffs never appealed the order.

Defendants contend that this current law suit is being orchestrated by the UTPHR and that the UTPHR should not be permitted to file a new law suit by just changing the named plaintiff. Plaintiff Bittinger responds that even before the *Spaulding* law suit was dismissed, he sought legal advice from his present counsel who advised him that since he was a member of the *Spaulding* class, litigation would be duplicative. *See* Pl's. Br. at 3. Bittinger's counsel advised him to wait and see how the *Spaulding* litigation turned out. Once the *Spaulding* law suit was dismissed, Bittinger again went to consult with counsel who later filed this instant action. Bittinger's counsel denies any control of the present litigation by the UTPHR and states that the retainer agreement between her firm and Bittinger contains only Bittinger's name.

## II. Summary judgment standard

Under Fed.R.Civ.P. 56(c), the party moving for summary judgment bears the initial burden of informing the court of the reason(s) for its motion and of identifying the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The substantive law identifies which facts are material, and once materiality of a fact is established, the court must determine whether a genuine issue regarding that fact exists in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court is not to make credibility determinations or weigh the evidence upon a motion for summary judgment. *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir.1994) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

When determining whether there is a genuine issue for trial, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). "Although a plaintiff is entitled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

"[I]n the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995). To avoid summary judgment, Rule 56(e),

> requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admission on file, designate specific facts showing that there is a genuine issue for trial.

*Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. *See Pierce*, 40 F.3d at 800. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

## III. Discussion

The doctrine of res judicata will bar the relitigation of a claim when there is:

(1) a final decision on the merits;

(2) involving the same parties or their privies;

(3) involving issues actually litigated or those which should have been litigated;

(4) and identity of causes of action.

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992). This Court will address each of these elements in turn.

### A. A final decision on the merits

■ When this Court granted defendant's motion for summary judgment and dismissed the *Spaulding* complaint in its entirety with prejudice, there was a final decision on the merits for res judicata purposes. *See Mayer v. Distel Tool and Machine Co.,* 556 F.2d 798 (6th Cir.1977).

### B. Involving the same parties or their privies

■ Res judicata will only bind a non-party if the non-party was in privity with a party to the prior action. *Becherer v. Merrill Lynch, Pierce, Fenner & Smith,* 43 F.3d 1054, 1069 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 296, 133 L.Ed.2d 203 (1995). Privity can be established in any of the following three ways:

First a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party.... Second, a non-party who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.

*Id.* at 1070 (quoting *Southwest Airlines Co. v. Texas Int'l Airlines,* 546 F.2d 84, 95 (5th Cir.1977)). In the present case, the interests of Bittinger and his class were represented adequately by the plaintiffs in the *Spaulding* case.

■ As a means of establishing privity for res judicata purposes, adequacy of representation does not refer to the competence of the previous litigation. *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172 (5th Cir.1987), cited with approval in, *Becherer,* 43 F.3d at 1070. Rather, adequacy of representation refers to the concept of virtual representation which has been developed largely by the Fifth Circuit:

[adequacy of representation] refers to the concept of virtual representation, by which a nonparty may be bound because the party to the first suit is so closely aligned with his [the non-party's] interests as to be his virtual representative.

*Benson and Ford* at 1175 (citations omitted).

■ The Sixth Circuit has very recently acknowledged the doctrine of virtual representation in *Becherer.* Adopting the language of Fifth Circuit precedent, the Sixth Circuit described virtual representation as requiring:

more than a showing of parallel interest or, even, a use of the same attorney in both suits.... The question of virtual representation is one of fact and is to be kept within "strict confines." ... Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.

*Becherer* at 1070 (quoting *Benson and Ford,* 833 F.2d at 1175). "Close nonlitigating relationships with a party, participation, apparent acquiescence, and perhaps deliberate maneuvering to avoid the effects of the first action are among factors to be weighed." *Becherer,* at 1070 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure,* § 4457 (1981)).

The court in *Becherer* found that because the issue was insufficiently developed at the trial court level and because many facts were in dispute, it could not hold that virtual representation was applicable. *Id.* at 1071. However, the court did note that it was highly likely that virtual representation would be applicable in that case:

The briefs submitted by the parties on appeal, however, demonstrate a strong possibility that this case may yet be an appropriate one for the application of res judicata and collateral estoppel. Merrill Lynch contends that the Florida plaintiffs, through the Association of Unit Owners, authorized, financed, and controlled the investigation and prosecution of the Becherer plaintiffs' suit, including hiring an at-

torney and arranging to pay him a combination retainer and contingency fee.

*Id.*

The *undisputed* facts in the present case are strikingly similar to those which the Sixth Circuit in *Becherer* indicated would rise to virtual representation. Here, it is undisputed that the aggrieved retirees formed the UTPHR for the sole purpose of seeking legal advice and pursuing legal action for the approximately 1200 retirees. The UTPHR created mailing lists, held meetings and collected dues to fund the litigation. The association also had attorneys come speak to its members. The association authorized the plaintiff's filing of the *Spaulding* law suit and granted the attorney discretion in pursuing it. The UTPHR sent an announcement to its members that an attorney had been hired and asked for more money and affidavits. The association sent out mailings to its members keeping them up to date on developments. Plaintiff Bittinger was a member of the group, had submitted an affidavit as requested by the UTPHR and had contributed money on several occasions. It was Bittinger's understanding that this money would be used to help defray the cost of the *Spaulding* litigation.

Thus, in the present case, the application of virtual representation is appropriate. The interests of the parties in both suits were more than closely aligned, they were virtually identical. Moreover, Bittinger and several retirees participated in the earlier law suit by submitting affidavits and helping to fund the litigation. The retirees apparently acquiesced to the representation of their interests by the UTPHR and the named plaintiffs in the *Spaulding* suit. In particular, Bittinger delayed pursuing his own cause of action because he was a member of the purported class in *Spaulding*. Clearly, Bittinger expected to benefit from the *Spaulding* law suit if it was successful. Finally, an "express or implied legal relationship" exists between the retirees and the organization which they created and funded for the sole purpose of obtaining legal relief. This legal relationship made the parties in the *Spaulding* suit and the UTPHR accountable to Bittinger and members of his class.

Based on a weighing of all of the factors mentioned by the Sixth Circuit in *Becherer,* this Court finds that plaintiff Bittinger and his class were in privity with both the plaintiffs in *Spaulding* and the UTPHR who controlled that law suit.

## C. Involving issues actually litigated or those which should have been litigated

■ This third requirement of res judicata "prohibits parties from bringing claims they have already brought or should have brought." *Sanders,* 973 F.2d at 482. The present complaint asserts some claims virtually identical to those in the *Spaulding* case. Regardless of the remaining differences between the causes of action in the respective complaints, it has not been suggested, nor can it be shown, that this Court, which has jurisdiction over all of the present claims, would not have been able to hear these new causes of action in the *Spaulding* case. *See Id.* Having reviewed the respective complaints, this Court finds that the present case involves claims that have already been brought or should have been brought in the *Spaulding* case.

## D. Identity of causes of action

■ For res judicata purposes, there will be an identity of causes of action where there is "an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders,* 973 F.2d at 484, (quoting *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981)). In the present case, the facts giving rise to the action are precisely the same as those in *Spaulding*—both suits involved complaints arising from the alleged unilateral termination of retiree benefits by defendant Tecumseh. Similarly, the evidence required to sustain each action is identical.

## E. Due process concerns

■ Plaintiff contends that even if the elements of res judicata are established, "the constitutional requirements of due process mandate that absent class members are not bound by a judgment in a class action unless the class representative provided adequate

and fair representation." Pl's. Br. at 17. Plaintiff argues that the plaintiffs in the *Spaulding* litigation did not adequately represent his interests and the interests of his current class. In particular, plaintiff states that attorneys in the first law suit made strategic errors; failed to adequately protect attorney-client privilege; failed to monitor the conduct of the UTPHR; allowed the leaking of strategies; and failed to appeal this Court's order granting summary judgment against them. All of these factual assertions are made without any documentary support whatsoever. Plaintiff's counsel does not point to a single affidavit nor does she make one citation to the record in support of these facts. Such unsupported factual assertions by an attorney are insufficient to defeat a motion for summary judgment. *See Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 50, 133 L.Ed.2d 15 (1995) ("in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim").

Nonetheless, even if plaintiff had come forward with probative evidence suggesting inadequacy of representation, this Court would still find due process to have been satisfied. This Court points out that it is not applying res judicata on the basis of the alleged class action status of the *Spaulding* case. Thus, the class action cases cited by plaintiff have no direct application. Instead, this Court has found the application res judicata to be appropriate based on the conclusion that the interests of the parties in the present suit were so closely aligned with the parties in the *Spaulding* litigation such that the latter could be deemed the former's virtual representative. This Court finds that this "close alignment of interests", the express or implied legal accountability of the *Spaulding* plaintiffs and the UTPHR to the current plaintiffs and the participation and acquiescence of the present plaintiffs in the *Spaulding* law suit are more than enough to satisfy the requirements of due process. *See Klugh v. United States*, 818 F.2d 294, 300 (4th Cir.1987); *Symbol Technologies, Inc. v. Metrologic Instruments, Inc.*, 771 F.Supp. 1390 (D.N.J.1991).

## IV. Conclusion

Having viewed the evidence in the light most favorable to plaintiff and his class, it is clear to this Court that there is no genuine issue of material fact regarding the applicability of any of the four elements of res judicata to the present case. Therefore, this Court finds that its January 22, 1993 order granting defendant's motion for summary judgment and dismissing the entire *Spaulding* complaint precludes Bittinger and his class from bringing this current action.

Defendants' motion for summary judgment on claim preclusion grounds will be granted.