**In re ABRAM & TRACY, INC., Debtor.**

**Abram & Tracy, Inc., Plaintiff,**

v.

**Internal Revenue Service, et al., Defendants.**

**Bankruptcy No. 97–52383.**
**Adversary No. 00–0172.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

April 11, 2002.

Sara J. Daneman, Gahanna, Ohio, for plaintiff.

Deborah F. Sanders, Columbus, Ohio, Assistant United States Attorney.

Eleanor Beavers Haynes, Columbus, Ohio, Special Counsel for the Attorney General.

Michelle T. Sutter, Columbus, Ohio, Office of the Ohio Attorney General.

Alexander G. Barkan, Columbus, Ohio, Assistant United States Trustee.

### ORDER GRANTING MOTION OF ABRAM & TRACY, INC. FOR PARTIAL SUMMARY JUDGMENT

CHARLES M. CALDWELL,
Bankruptcy Judge.

A Motion for Partial Summary Judgment and Memoranda in Opposition are before the Court. Abram & Tracy, Inc. ("Debtor") seeks this relief. The Debtor is opposed by the State of Ohio Department of Taxation ("State") and the Internal Revenue Service ("IRS"). The dispute is based upon a confirmed plan that provides a release for the principal of·the Debtor.

According to the State and the IRS the release exceeds the jurisdiction of this Court. They point to section 524(e) of the United States Bankruptcy Code ("Code"). That section provides that the, "... discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." They also argue that the Debtor has improperly modified its confirmed plan. On the other hand, the Debtor asserts there is no statutory prohibition against third-party releases. In addition, the Debtor protests that the State and the IRS failed to object to the confirmation of the plan or appeal its confirmation, and are barred from challenging any of the provisions of the confirmed plan. The Court has concluded that the Debtor's Motion should be granted. A brief history of this case will illustrate the bases for the decision.

The Debtor had been engaged in the heating and plumbing construction business since 1969. Because of an inability to collect on receivables between 1989 and 1992, it did not make tax withholding payments. All business operations ceased in 1995. Subsequently, the Debtor's sole function was the leasing of its real property on Sullivant Avenue ("Property"). Tax collection efforts prompted the instant chapter 11 filing, commenced on March 28, 1997. The Debtor scheduled secured indebtedness to the IRS and the State in the respective amounts of $150,000.00 and $31,000.00 for withholding taxes. The scheduled security was the Property that the Debtor listed as having a value of $319,000.00. The Debtor listed Keybank has holding a first mortgage in the amount of $93,000.00. After the complete satisfaction of obligations to the IRS, the State, and to Keybank, it would appear from the Schedules that there would be approximately $45,000.00 to satisfy unsecured obligations. At least on the date of filing, it

appeared that the Debtor could satisfy all creditors' claims from the Property and even retain a modest surplus. On April 23, 1997, the IRS filed a Proof of Claim for $159,424.42, and on July 22, 1997, the State filed a Proof of Claim for $67,284.46.

On July 28, 1997, the Debtor filed an Amended Liquidating Plan of Reorganization and a Disclosure Statement. The Debtor premised the funding for the Amended Liquidating Plan on the sale of the Property, pursuant to an executed listing agreement at the price of $349,000.00. The Debtor proposed to pay the allowed secured claim of the State in full. As for the IRS, the Debtor scheduled its claim as disputed; however, the Debtor proposed to pay any amount that was found payable, in full. The Amended Liquidating Plan specifically provided as follows:

> The rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in consideration of complete satisfaction of all Claims and termination of all Interests, including any interest accrued on Claims from the Petition Date.

> As of the Confirmation Date, except as provided in the Plan, all entities shall be precluded from asserting against the Debtor, its officer, shareholder or their respective properties of the Debtor (sic), any other or further Claims, debts, rights, causes of action or liabilities based upon any acts, omission, transaction or other activity of any nature that occur prior to the Confirmation Date.

The Court set an October 7, 1997, hearing to approve the Amended Disclosure Statement and confirm the Amended Liquidating Plan. The objection deadline was September 26, 1997. A review of the record shows that only two objections were filed with the Court—one by Keybank and one by the State. Keybank objected to

the lack of a date certain for the lifting of the automatic stay in the event the Debtor was unable to sell the Property. Keybank also objected that there was no provision for interim payments. The State objected that the Debtor had not revealed enough information regarding the treatment of its claim.

After the confirmation hearing, the Court entered two agreed orders—one for Keybank and one for the U.S. Trustee. In the Keybank Agreed Order entered on October 31, 1997, the parties stipulated that to allow the Debtor to complete the sale, the stay would remain in effect until November 1, 1999. There was also a provision for interim payments. In the U.S. Trustee's Agreed Order entered October 31, 1997, the parties stipulated to the continued post-confirmation payment of quarterly fees. Neither the State nor the IRS obtained an agreed entry to preserve their interests.

On February 2, 1998, the Court entered an Order Confirming Debtor's Chapter 11 Plan that specifically referenced the two Agreed Orders detailed above. To consummate the confirmed Amended Liquidating Plan, the Debtor filed an Application to Appoint a Realtor to market the Property on May 18, 1998, and an order was entered on June 8, 1998. After a long series of status reports and status hearings, a prospective purchaser was finally found, as contemplated by the confirmed Amended Liquidating Plan. On February 4, 2000, a Motion of Debtor for Order Authorizing the Sale of Real Estate Free and Clear of Liens was filed. The Debtor proposed to sell the Property for $240,000.00 in cash, a price much lower than the listing price and the scheduled value. In its Motion, however, the Debtor revealed that in April 1999, fire damaged one building. It was detailed that the Debtor received $36,000.00 in insurance,

and $30,000.00 was paid to Keybank. The balance was held in escrow with the city of Columbus to cover fire excavation costs. After the payment of various closing costs, the Debtor proposed to pay Keybank in full. The Debtor also proposed to pay the State $44,000.00 and the IRS $60,000.00 in full satisfaction of their claims.

On February 23, 2000, an Objection to Motion to Sale Free and Clear of Liens was filed by the State. In this Objection, the State sought payment in full of secured lien interests. On March 14, 2000, the IRS also filed an Objection. The IRS asserted that the proposal was insufficient to satisfy its liens. Further, the IRS argued that the proposed payment was an improper modification of the plan, and that the Debtor was improperly seeking a discharge of the officer's liability. An Amended Agreed Order Authorizing Debtor to Conduct Sale of Real Estate Free and Clear of Liens was entered on June 22, 2000. In relevant part, the Order provided the Debtor was authorized to complete the sale, and disburse closing costs, real estate taxes, the court-appointed realtor's commission, and payment in full to Keybank. All lien interests of the IRS and the State were to attach to the net proceeds. The Debtor was required to file within five days an adversary proceeding to determine the extent and validity of the liens of the IRS and the State. The Debtor filed the instant adversary proceeding on June 23, 2000. Unfortunately, this sale never closed because the prospective purchaser failed to obtain financing.

On November 13, 2000, the Court entered an Order to Show Cause for Conversion or Dismissal based upon the inability of the Debtor to complete the sale. A hearing was set for February 5, 2001, at 10:00 a.m. Subsequently, on January 2, 2001, the Debtor filed, pursuant to the confirmed Amended Liquidating Plan, a

second Motion to Sell Real Property Free and Clear of Liens, this time by public auction. The Debtor proposed payment in full to Keybank, but listed the claims of the State and the IRS as disputed. All liens were to attach to the proceeds.

The auction was conducted on January 22, 2001, and the property sold for $160,000.00. On January 25, 2001, the Debtor filed a Motion for Authority to Complete the Sale Free and Clear of Liens. The Debtor proposed payment in full to Keybank, and the payment of real estate taxes and the auctioneer's fee. Liens were to attach to the proceeds to be held in escrow pending a conclusion of the instant adversary proceeding. After a lengthy series of difficulties in closing this sale, on June 18, 2001, a final Order authorizing the completion of the sale was entered. The Debtor realized $65,248.37 in net proceeds.

█ In addressing the issues raised by the parties, stepping back is helpful to review what happened in this five-year-old chapter 11 proceeding. First, the Debtor proposed and had confirmed a plan that called for the liquidation of its real property. Like any other sale of real property in bankruptcy, a listing price is set, the debtor retains a broker, and they market the property. Inherent in this exercise is the risk that the property may sit on the market for a substantial period. Its condition may deteriorate by unforeseen events such as fire. At the end of the process, the property may sell for an amount lower than the listing price or even the scheduled value. Known variables affect the establishment of a listing price, such as recent comparable sales and location, but it is not an exact science. There is never a guarantee that property will sell for the listing price. The fact that in the instant case the property sold for much less than the listing price and the scheduled value is

nothing more than a measure of reality. We cannot now characterize it as an impermissible modification of the original plan. To be fair to the State and the IRS, it does not appear that anyone fully appreciated or anticipated that the sale proceeds would not be sufficient to pay all claims.

█ The second reality of this case is that the State and the IRS did not challenge the release provision during the confirmation process. This fact is at the heart of the Debtor's assertion that the State and the IRS are precluded from objecting now. The State and the IRS seek to overcome this obstacle by arguing that this Court was without jurisdiction to grant a third-party release under section 524(e) of the Code. Since this is a matter of jurisdiction, they argue it can be raised anytime. Recently, the Sixth Circuit Court of Appeals has ruled that bankruptcy courts have the jurisdiction to enjoin creditor action against third parties, over creditor opposition. *In re Dow Corning Corp.*, 280 F.3d 648, 656–658 (6th Cir.2002). It is important to note that in *Dow Corning*, unlike the instant case, however, the creditors objected to the plan. The Sixth Circuit Court of Appeals has held that the confirmation of a chapter 11 plan has the effect of a judgment. On this basis the principle of *res judicata* precludes the further litigation of any issues that parties raised or could have raised during the confirmation process. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463–464 (6th Cir.1991); *In re Sanders Confectionery Products, Inc.*, 973 F.2d 474, 480–485 (6th Cir.1992), *cert. denied* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993), *reh. denied* 507 U.S. 1002, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993).

█ The third reality of this case is that the Debtor has disbursed funds to Keybank. As a result, the plan has been substantially consummated. This fact pre-

cludes any modification of the terms of the confirmed Amended Liquidating Plan by the Debtor, the IRS or the State. *In re Burnsbrooke Apartments of Athens, Ltd.,* 151 B.R. 455, 456–458 (Bankr.S.D.Ohio 1992). At this point, all this Court can do is ensure that all parties follow the provisions of the Code and the confirmed Amended Liquidating Plan. *In re Pioneer Inv. Servs. Co.,* 141 B.R. 635, 641–642 (Bankr.E.D.Tenn.1992).

The Court concludes that there is no jurisdictional bar to the granting of third-party releases, and because the Amended Liquidating Plan was confirmed without opposition from the State and the IRS, they cannot object now. This Order, however, should not be viewed as a criticism of the State and the IRS. Their actions are understandable given the potential at the outset of this case that the Debtor could pay all claims. Hindsight is always perfect. The difficulty is that at this point there is simply no relief this Court can fashion. As noted by one commentator, "The heart of the reorganization process is found in § 1141 of the Code, which prescribes the effect of the confirmation of the plan of reorganization. The essential effect of § 1141 is to dissolve the pre-confirmation relationships of the parties and replace them with the relationships specified in the plan of reorganization." Ralph E. Avery, *Chapter 11 Bankruptcy and Principles of Res Judicata,* 102 Com.L.J. 257, 290 (1997).

Accordingly, the Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**