RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18b0008p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  HNRC DISSOLUTION COMPANY,

*Debtor*.

TERRY GIESE,

*Plaintiff-Appellant*,

*v*.

LEXINGTON COAL COMPANY,

*Defendant-Appellee*.

No. 16-8013

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Ashland.
No. 02-14261—Tracey N. Wise, Judge

Argued:  August 22, 2017

Decided and Filed:  June 1, 2018

Before:  HARRISON, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

———————

## COUNSEL

**ARGUED:**  Michael J. Gartland, DELCOTTO LAW GROUP PLLC, Lexington, Kentucky, for Appellant.  Janet Smith Holbrook, DINSMORE & SHOHL, LLP, Huntington, West Virginia, for Appellee.  **ON BRIEF:**  Michael J. Gartland, DELCOTTO LAW GROUP PLLC, Lexington, Kentucky, Philip G. Fairbanks, MEHR FAIRBANKS TRIAL LAWYERS, PLLC, Lexington, Kentucky, for Appellant.  Janet Smith Holbrook, DINSMORE & SHOHL, LLP, Huntington, West Virginia, for Appellee.

———————————

**OPINION**

———————————

DANIEL S. OPPERMAN, Chief Bankruptcy Appellate Panel Judge.  This case involves a dispute regarding funds allegedly held in escrow to pay royalties connected to coal mining. According to Appellant, Terry Giese ("Giese"), a company known as Horizon Natural Resources Company ("HNRC") paid royalties derived from those mining operations into an account for the benefit of someone identified as E. Begley and Begley's heirs and successors.  After buying the property on which the relevant mining operations occurred, Giese filed a complaint in a Kentucky state court asserting a right to the escrowed royalties.

Appellee Lexington Coal Company ("Lexington Coal") disputed Giese's claim, arguing it purchased all cash and accounts of HNRC and HNRC's parent company during a bankruptcy case involving those entities.  Lexington Coal had been a defendant in an interpleader action, before the Bankruptcy Court, to determine the rightful owner of the funds at issue.  Following notice to all interested parties, the Bankruptcy Court overseeing that interpleader action determined that Lexington Coal and another company—International Coal Group, Inc. ("ICG")—owned the funds.  Ultimately, Giese's state court action was removed and referred to the Bankruptcy Court.

In response to the case being removed, Giese argued, as he argues here, that the Bankruptcy Court was required to abstain from adjudicating two counts of his state court complaint.  The Bankruptcy Court declined to abstain.  The Court, after determining it had jurisdiction over all of Giese's claims, dismissed his complaint.  Giese appeals both the Court's decision to not abstain and the Court's decision to dismiss his adversary complaint.  Because the Bankruptcy Court acted properly, this Panel affirms its decision.

## ISSUES ON APPEAL

1.     Whether the Bankruptcy Court was required to abstain from adjudicating the causes of action asserted by Giese's state court complaint and required to remand same to the state court under 28 U.S.C. § 1334(c)(2).

2.     Whether the Bankruptcy Court erred in entering the Dismissal Opinion and Judgment on the basis of res judicata.

## JURISDICTION

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the Bankruptcy Court.  For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quotation marks and citation omitted).  The orders and opinions at issue in this appeal are final and none of the parties to this appeal challenge the Panel's jurisdiction to hear it.

## STANDARD OF REVIEW

### 1.     Standard of Review Regarding Mandatory Abstention Decision

The Panel reviews the Bankruptcy Court's decision regarding abstention de novo.  *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).  The Bankruptcy Court's conclusions of law also are reviewed de novo.  *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).  When conducting a de novo review, the Panel decides the issues independent of and without deference to the Bankruptcy Court's conclusions.  *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).

### 2.     Standard of Review Regarding the Dismissal Opinion and Judgment

The second issue Giese raises is the propriety of the Bankruptcy Court's Opinion and Judgment relying on res judicata to dismiss his adversary proceeding.  In this case, that analysis involves determination of whether a certain financial account was property of the bankruptcy

estate.  The Panel reviews the Bankruptcy Court's order of dismissal de novo.  *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006).  It also applies de novo review to the determination of whether an asset is estate property.  *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611, 612 (6th Cir. 2000).  When conducting a de novo review, the Panel decides the issues independent of and without deference to the Bankruptcy Court's conclusions.  *Morgeson*, 371 B.R. at 800.  Additionally, when reviewing the order dismissing Giese's adversary complaint, the Panel must construe that complaint in the light most favorable to Giese and accept its allegations as true, drawing all reasonable inferences in Giese's favor.  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

**FACTS**

**A.      The Underlying Bankruptcy**

In November 2002, Leslie Resources, Inc. ("Leslie Resources"), along with numerous affiliates that included HNRC (collectively, "Debtors"), filed voluntary Chapter 11 bankruptcy petitions.  The Bankruptcy Court for the Eastern District of Kentucky jointly administered these Debtors' cases under the lead case *In re HNRC Dissolution Co.*, Case No. 02-14261, 2005 Bankr. LEXIS 448 (Bankr. E.D. Ky. March 4, 2005). Leslie Resources scheduled as an estate asset $316,358.00, which was held in an account ("the Account") at Community Trust Bank ("Community Trust").  In the schedules, Leslie Resources described the money in the Account as "restricted cash" but did not indicate the nature of the restriction.  Community Trust's records described the Account as an escrow account, and it appears the Account's purpose was to hold royalties for owners of property on which Leslie Resources mined coal.  The record before the Panel does not reflect that any other party laid claim to the Account or objected, during the bankruptcy case or confirmation process, to the handling or treatment of the Account as estate property.

The Debtors filed their First Amended Joint Plan of Reorganization and First Amended Joint Liquidating Plan on May 13, 2004.  That plan contemplated the sale of substantially all of the Debtors' assets per an Asset Purchase Agreement between the Debtors (including Leslie Resources) and a proposed purchaser.  To that end, the Debtors filed an amended motion seeking

Bankruptcy Court approval for auction procedures, a breakup fee, and the form and manner of notice regarding same, and asked the Court to set a sale date. The Court granted the amended motion on June 16, 2004, and set a deadline for objections to the proposed sale. No relevant objections were filed.

The Bankruptcy Court approved sale notice described the auction procedures, bid requirements, and court approval requirements. The record before the Panel does not reflect that any party relevant to this appeal, or any predecessor-in-interest of such a party, objected to the sale notice. In light of the representation in the schedules that the Account was property of the Debtors, presumably the Account could be sold along with the Debtors' other assets; yet no one asserted that the Account could not properly be conveyed by the Debtors. The notice was served on all creditors, parties-in-interest, and other parties to related contracts and leases. Relevant to this matter, the parties to lease contracts included heirs of E. Begley. These were the "leasing heirs," and they received royalty payments from exploration on their property. E. Begley had other heirs who were not parties to the leases ("non-leasing heirs") but who nonetheless owned interests in the property from which the lease royalties derived.

The sale notice also was published in trade publications, the *Wall Street Journal*, and at least four regional newspapers. The auction sale took place on August 17, 2004, with two purchase agreements involving Leslie Resources emerging. The first agreement was with ICG and the second was with Lexington Coal. Both agreements provided for sale of the Debtors' "cash and cash equivalents." Again, no one objected to sale of the Account by the Debtors. Thereafter, the Bankruptcy Court approved the two sales and confirmed the Debtors' plan. The order approving the sales included the following relevant determinations and provisions:

1. Proper and adequate notice of the Sale Motion has been given and no other notice or further notice is required.

2. Each purchaser is a good faith purchaser under § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in consummating the transactions contemplated by the applicable Agreement.

3. The Order vested in each Purchaser all right, title, and interest in the Purchased Assets free and clear of any encumbrances.

4.      With respect to assumed liabilities, none of the Purchasers shall have any liability for any (i) obligation of the Debtors, or (ii) any Claim against the Debtors related     to the Purchased Assets, except as expressly provided in the sale agreements.

5.      All persons and entities are hereby prohibited and enjoined from taking any action that would adversely affect or interfere with the Debtors' ability to sell and transfer the Purchased Assets.

6.      The transfer of title to the Purchased Assets shall be free and clear of any and all encumbrances.

Order Approving Sale at 3, 5-7, 12-14, 16, Bankr. No. 02-14261 ECF No. 4085.

The Order Confirming Plan contained similar language. The record before the Panel does not indicate that any party relevant to this appeal, or any predecessor-in-interest of such party, objected to the approval or confirmation orders.

**B.      The Interpleader Adversary Case**

Although both of the aforementioned purchase agreements provided for the sale of "all cash and cash equivalents" of the Debtors, neither agreement contained a list of the cash assets each purchaser was buying. This resulted in confusion regarding the Account—Community Trust could not determine the rightful owner of the Account funds. Accordingly, in 2006 Community Trust filed an interpleader adversary proceeding requesting the Bankruptcy Court determine the Account's rightful owner. Among the Defendants in that action were ICG, Lexington Coal, the Debtors' Liquidating Trustee, and E. Begley, who was described as an unknown claimant referred to on the Business Account Agreements.

Following diligent search and inquiry, Community Trust notified the Court that it could not determine E. Begley's full name or whereabouts. Thus, the Court granted Community Trust leave to serve E. Begley by publication, which it did in compliance with applicable law. It turns out E. Begley passed away in the 1930's, so, understandably, he did not respond. None of the non-leasing heirs responded either. ICG and Lexington Coal were the only defendants who answered. In December 2006, ICG and Lexington Coal reached an agreement to divide the Account funds. Per their agreement, the Court entered an order distributing the funds to ICG and Lexington Coal.

**C.     Giese's Purchase of Interest and Subsequent Litigation**

In May and June of 2009, more than three years after entry of the order distributing the funds to ICG and Lexington Coal, Giese purchased property from the non-leasing heirs.  His purchase included the property that produced the aforementioned royalties.  Five years after that, and more than seven years after the Bankruptcy Court disbursed the Account funds, Giese filed a complaint in Kentucky state court, claiming an interest in those funds.  That complaint included the following causes of action: Count 1—Collection of Royalties (asserting Giese was entitled to receive all funds previously held in the Account); Count 2—Conversion (against ICG and Lexington Coal for receiving the Account funds); Count 3—Breach of Fiduciary Duty (against ICG and Lexington Coal for failing to properly notify all of E. Begley's heirs of the Account or sale); Count 4—Negligence (alleging ICG and Lexington Coal failed to ensure proper payment of the Account funds); Count 5—Fraudulent and Negligent Misrepresentation (alleging ICG and Lexington Coal made material misrepresentations or omissions before the Bankruptcy Court during the interpleader action); Count 6—Breach of Contract (against ICG and Lexington Coal as alleged successors in liability of Leslie Resources); and Count 7—Unjust Enrichment (against ICG and Lexington Coal for receiving Account funds).

On May 27, 2014, ICG and Community Trust timely removed Giese's case to the U.S. District Court for the Eastern District of Kentucky.  Giese moved the District Court for remand or, in the alternative, to exercise mandatory abstention and refrain from hearing the case.  The District Court denied those requests and referred the case to the Bankruptcy Court.  Once in the Bankruptcy Court, Giese renewed his request for mandatory abstention, arguing that the case neither arose under Title 11 nor arose in the bankruptcy case.  According to Giese, state law and not bankruptcy law created his causes of action.

The Bankruptcy Court disagreed and, on September 9, 2015, the Court entered an order denying Giese's request.  The Court held that it had "arising in" jurisdiction over the causes of action Giese asserted in the state court case.  *Giese v. Cmty. Trust Bank (In re HNRC Dissolution Co.)*, Adv. No. 15-01005, 2015 Bankr. LEXIS 3059, at *19 (Bankr. E.D. Ky. Sept. 9, 2015) *(Giese II)*.  According to the Bankruptcy Court, the "removed action seeks an adjudication of title to funds that this Court has already adjudicated at least once, if not twice." *Id.* at *2.  The

Court further stated that "[f]ew actions could arise in a bankruptcy case more clearly than this one, which not only facially attacks a judgment entered in a bankruptcy case, but claims that that judgment was obtained by tortious acts and seeks damages resulting from its entry." *Id.* at *3. Giese appeals the order denying abstention, arguing that Counts 1 and 6 of his complaint were not core and the Bankruptcy Court should have abstained from hearing them.

The Bankruptcy Court did not fully address that issue, determining instead that because five of the causes of action were properly before it, the Court had jurisdiction over the remaining two, whether or not they were core. *Id.* at *22. The Court stated "[a]bstaining in the two remaining counts, which are inextricably intertwined with and seek the same relief as the other five, would be wholly impracticable." *Id.* at *23.

After deciding it had jurisdiction and would not abstain, the Bankruptcy Court heard argument on the Defendants' joint Motion to Dismiss, with which Lexington Coal joined. Lexington Coal asserted that Giese's claims were barred by res judicata, arguing that the various prior rulings regarding the Account disposed fully and finally of any issues or interests regarding the Account. The Court agreed and dismissed Giese's adversary proceeding. *Giese v. Cmty. Trust Bank (In re HNRC Dissolution Co.)*, 549 B.R. 469, 484 (Bankr. E.D. Ky. 2016) *(Giese III)*.

In its Opinion, the Court pointed out that the sale order in the initial bankruptcy case was "good against the world, including [Giese], and [Giese] may not collaterally attack" that order. *Id.* at 480. Additionally, Giese's claim to the Account could and should have been brought by his predecessor-in-interest, with whom he was in privity, during the bankruptcy case. *Id.* at 481-82. The Court also noted that the Order Confirming Plan was a final judgment in the bankruptcy case and Giese could not re-litigate it. *Id.* at 482. Giese appeals the Bankruptcy Court's order dismissing the complaint.

## DISCUSSION OF MANDATORY ABSTENTION

Giese's first argument is that Count 1 (collection of royalties) and Count 6 (breach of contract) of his state court complaint were non-core proceedings and, as a result, 28 U.S.C. § 1334(c)(2) required the Bankruptcy Court abstain from adjudicating them. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Thus, mandatory abstention applies when a proceeding 1) is based on a state law claim or cause of action; 2) lacks federal jurisdiction absent the bankruptcy; 3) is commenced in a state forum of appropriate jurisdiction; 4) is capable of timely adjudication; and 5) is a non-core proceeding. *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 320 (6th Cir. 2006). Here, the parties only dispute the fifth factor—whether Giese's state court claims were core or non-core.

In *Giese II*, the Bankruptcy Court determined it had "arising in" jurisdiction over Counts 2-5 and Count 7 of the state court complaint, and Giese does not challenge that conclusion. The Court then decided mandatory abstention did not apply to Counts 1 and 6 either. According to the Court, it already had before it the "bulk" of the claims and did not need to determine whether the remaining two claims were core matters for purposes of deciding the request for abstention, because abstaining from them would be "wholly impracticable" as they were "inextricably intertwined with and seek the same relief as the other five." *Giese II*, 2015 Bankr. LEXIS 3059, at *19, *23.

Giese challenges this conclusion. According to Giese, mandatory abstention under § 1334(c)(2) applies to individual claims within a case. Giese argues that a "proceeding," as the word is used in that section, means a discreet claim and not an entire case. Thus, according to Giese, the Court was required to abstain from adjudicating any discreet claims over which the Court did not have independent jurisdiction, even if the overwhelming majority of the entire case was properly before the Court. The Panel does not agree with Giese's reading of the applicable law.

In its decision, the Bankruptcy Court relied heavily—and correctly—on *Milford Group, Inc. v. Ne. Bank of Pa. (In re Milford Group, Inc.)*, 164 B.R. 892 (Bankr. M.D. Pa. 1993). That case involved, in part, consideration of mandatory abstention under § 1334(c). *Id.* at 897.

In *Milford*, the court determined that five of the nine claims at issue were core matters either arising in or under the Bankruptcy Code. *Id.* The court then stated that because "some of the claims within the proceeding do arise under Title 11 and are therefore core matters," mandatory abstention was not appropriate. *Id.* Thus, per *Milford*, a "proceeding" is an entire case, not the discreet claims or causes pursued within that case. *See id.*

The Bankruptcy Court adopted the *Milford* definition of "proceeding," determining that the word meant the whole adversary proceeding and not the individual, discreet claims raised therein. And Giese concedes that when reading § 1334(c)(2) "in isolation, the Bankruptcy Court's interpretation of 'proceeding' to mean adversary proceeding is not completely implausible." Appellant's Br. at 23, Sept. 6, 2006, Case No. 16-8013 ECF No. 27. However, Giese cites 28 U.S.C. § 157(b)(2) and asserts that the list of "core proceedings" contained therein is claim specific. According to Giese, this delineation of the claims constituting core proceedings requires a claim-by-claim analysis of abstention under § 1334. That argument is not persuasive. In the first place, § 157 does not address abstention. It also does not explicitly state that each claim delineated therein must be treated as its own discreet proceeding when arising in a complaint that includes other such claims. Instead, the Panel reads § 157 as simply providing a list of claims each of which, *if pursued alone*, would be sufficient to constitute a "proceeding." Here, however, the discreet claims upon which Giese relies were not pursued alone. They were a part of a larger adversary case involving numerous other claims. It was that entire adversary case that constituted a "proceeding" under § 1334.

Giese also cites *Waldman v. Stone*, 698 F.3d 910, 921 (6th Cir. 2012), for the proposition that a court must determine whether a proceeding is core under § 157(b) on a claim-by-claim basis. This argument is not persuasive either. *Waldman* did not involve an analysis under § 1334, and Giese's brief concedes that "the Sixth Circuit has not squarely held" whether the word "proceeding" in § 1334(c)(2) supports a claim-by-claim analysis for purposes of mandatory abstention. This reality and Giese's concession of it immediately minimize *Waldman's* usefulness here.

Additionally, the facts in *Waldman* differ from this case in an important way. In *Waldman*, the lower court had determined that the debtor's affirmative claims were non-core

because they were based on state law and he could have filed them "as easily before he declared bankruptcy as afterward." *Id.* at 922. That is not true here. Before and apart from the bankruptcy case, Giese had no claim against Lexington Coal. It is only because of the bankruptcy and interpleader cases that Giese had any colorable claim against Lexington Coal.

A case more similar to this one is *Lowenbraun*, 453 F.3d 314. *Lowenbraun* involved a party requesting a bankruptcy court abstain from hearing claims that sounded in state law. *Id.* at 317. There, the trustee argued that a debtor transferring money to his wife under a legal separation agreement was an improper diversion of funds from the bankruptcy estate. *Id.* In turn, the wife sued the trustee in state court on theories sounding in state law. *Id.* The trustee removed the matter to the Bankruptcy Court for the Western District of Kentucky, which then denied the wife's request for abstention. *Id.*

On appeal, the Sixth Circuit Court of Appeals did not apply a claim-by-claim analysis to the wife's request for abstention. *Id.* at 321. Instead, the Sixth Circuit reasoned that "the genesis of her state law action was the bankruptcy proceeding." *Id.* Using similar language to that used by the Bankruptcy Court in this case, the Sixth Circuit noted that the wife's state law action was "inextricably bound" to the bankruptcy proceeding. *Id.* The wife's "claims would not exist but for the bankruptcy proceeding" so her action "was a core proceeding, thus precluding mandatory abstention." *Id.*

In the instant matter, the Bankruptcy Court correctly determined that Giese's claims were inextricably intertwined with the bankruptcy case and would not exist but for the bankruptcy. Like the claims in *Lowenbraun*, the genesis of Giese's claims against Lexington Coal was the bankruptcy case and the asset sale that occurred during the course of the bankruptcy case. The Account was listed on the Debtors' bankruptcy schedules, administered as part of the bankruptcy estate, and sold pursuant to an order confirming the Debtors' bankruptcy plan. Furthermore, as the Bankruptcy Court noted, the bulk of Giese's claims involve alleged "bad acts taken in a *bankruptcy proceeding.*" *Giese II*, 2015 Bankr. LEXIS 3059, at *19. Also, "[e]ach of [Giese]'s claims rises or falls on a disputed interpretation of ICG and Lexington Coal's asset purchase agreements with the Debtor—that those defendants did not purchase interests in the [Community

Trust] account." *Id.* at \*19. Thus, it is only because of the bankruptcy case and the Court-approved sale that occurred in that case that Giese had any claims against Lexington Coal.

Giese also argues that refusing to apply the claim-by-claim approach would undermine the purposes of mandatory abstention. But in the sentence immediately after Giese expresses this concern, he concedes that a bankruptcy court's non-core jurisdiction is "very broad, sweeping in state-law claims between non-diverse parties whenever those claims 'could conceivably have any effect' on a bankruptcy case." Appellant's Br. at 26 (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 482 (6th Cir. 1992)). The claims at issue "could conceivably" have impacted the bankruptcy case and the Court was right to adjudicate them.

Giese notes that, despite this broad jurisdiction, Congress also enacted a broad abstention doctrine in § 1334, to "keep federal jurisdiction from being overextended," and he argues that following *Milford* would thwart Congress's purpose. *Id.* at 26-27 (citing *Kelley v. Nodine (In re Salem Mortg. Co.)*, 783 F.2d 626, 635 (6th Cir. 1986)). The Panel disagrees. Allowing a court to hear two arguably non-core claims when it already is hearing five other core claims that are based on the same facts and involve the same parties would not over-extend a court or its jurisdiction. Such a court already is administering an entire adversary proceeding, with all of the work involved and legal implication that accompany those efforts.

Instead, sending two claims to a court that cannot, under any circumstance, adjudicate the other five related claims, poses a greater risk to important policy concerns. In that situation, there is a risk that the two venues would consider the same facts and evidence but reach different findings and holdings. This invites confusion and makes it difficult for the parties to move forward with certainty. Additionally, there is no judicial economy in splitting claims between two courts when one of those courts clearly has exclusive jurisdiction to address the bulk of the claims. Dividing the case would require duplicative discovery efforts and double the litigation required to resolve the dispute. For these reasons, the Panel finds that policy concerns justify the Bankruptcy Court's exercise of its broad jurisdiction.

The Bankruptcy Court also noted that, had it considered the issue of whether Counts 1 and 6 "arose in" the bankruptcy case and were core matters, it probably would have decided they were. The Panel need not address this issue. As Giese noted in his initial brief, the comment came in dicta. *See* Appellant's Br. at 27. The Bankruptcy Court did not analyze that issue sufficiently and its cursory statement about the issue was not part of its holding. Thus, any discussion of whether Counts 1 and 6 "arose in" would be advisory in nature.

## DISCUSSION OF DISMISSAL OPINION AND JUDGMENT

The asset sale at issue included all of Leslie Resources' assets, including "all cash and cash equivalents." In this appeal, Giese argues that the Account was a restricted account holding escrow funds for the benefit of the non-leasing heirs and, therefore, was not "cash" or a "cash equivalent" belonging to the Debtors in the underlying bankruptcy case. The parties spent substantial time, in briefing and during argument, arguing over the nature of the Account and whether it was estate property. But none of that matters at this stage. The time for those arguments was during the confirmation process in the bankruptcy case, not seven years after the confirmation and approval orders. All of the world, including all parties in interest, was put on notice that all of the Debtors' assets were to be sold. Yet, during the bankruptcy case, the Bankruptcy Court sustained no objections regarding the Account's status as an estate asset or regarding the sale of the Account, and the record before the Panel does not reflect that any party appealed any of the Court's orders regarding the sale or plan confirmation. And Giese points to nothing in the record determining that the funds in the Account were not property of the bankruptcy estate, or that the Debtors so stated at any time. Thus, the Bankruptcy Court correctly determined that res judicata barred Giese from raising those issues in the underlying case.

In its order dismissing Giese's adversary proceeding, the Bankruptcy Court noted that res judicata bars a claim if all of the following elements are present: 1) a final decision on the merits by a court of competent jurisdiction; 2) a subsequent action between the same parties or their privies; 3) an issue in the subsequent action that was or should have been litigated in the prior action; and 4) an identity in the causes of action. *Giese III*, 549 B.R. at 481 (citing *Browning v.*

*Levy*, 283 F.3d 761, 771 (6th Cir. 2002)) (additional citation omitted). The Court was correct when it concluded that each element existed in this case.

An order confirming a plan of reorganization constitutes a final judgment in a bankruptcy proceeding, and res judicata bars re-litigation of any issues that could have been raised during the confirmation proceeding. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir. 1991). This includes any actual or potential dispute over assets being sold or transferred pursuant to the plan. Additionally, a sale order ends litigation in a bankruptcy proceeding—with execution of the order "the debtor's assets are judicially sold and no further litigation can be brought regarding those assets without forcing the court to undo the sale, an action of the very kind res judicata seeks to prohibit." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 579 (6th Cir. 2008). In this case, issues with the sale and confirmation of the plan should have been addressed during the confirmation and sale process and resolved at that time. Thus, the Bankruptcy Court correctly determined that this first element of res judicata was met.

The Court also correctly determined that the second element was met. It is not only the actual parties, but those in privity with them, who are barred from re-litigating matters that should have been addressed in the original proceeding. *Browning*, 283 F.3d at 772. There was never any dispute that Giese was in privity with the heirs who could have raised these concerns during the bankruptcy.

As for the third element, there is an exception to res judicata when a party has not had a full and fair opportunity to litigate a claim. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S. Ct. 411, 415 (1980). This exception does not apply for the following reasons as stated by the Bankruptcy Court:

> The world was on notice that substantially all the Horizon Debtors' assets were to be sold, including coal leases and cash. The Begley Heirs, parties to [Leslie Resources] coal leases, had notice of the sales and confirmation process by publications in Kentucky, West Virginia and the Wall Street Journal. The proposed sales and confirmation process were advertised nationally and locally under procedures designed to give notice to all potential persons with an interest in any of the Debtors' assets. Whether the account was an escrow account or a deposit account is of no import because there was adequate notice that all of the

assets . . .were being sold. . . . Notice was reasonably calculated under the circumstances to apprise interested parties of the sales/confirmation process and an opportunity to object. Due process has been satisfied. Any claim to the restricted cash should have been litigated in the bankruptcy sale/confirmation process.

*Giese III*, 549 B.R. at 482. As the Court then noted, the confirmation order adjudicated the notice issue and barred claims to the assets sold, enjoining action against the purchasers. *Id.* The Panel finds no fault with the Court's analysis of the issue and holds that the Court was correct in determining the third element of res judicata was met.

Giese last argues that there was not identity in the causes of action. Identity of causes of action means identity in the facts creating the right of action and the evidence necessary to sustain each action. *Sanders Confectionery*, 973 F.3d at 484. Here, the same facts and evidence are necessary to support Giese's claims as were necessary to support the asset sale and confirmation of the plan of reorganization. They include, but are not limited to: facts and evidence regarding the true owner and purpose of the Account; facts and evidence regarding the nature of the notice provided for the sale; facts and evidence regarding the existence and nature of any duty owed by Lexington Coal to the non-leasing heirs; and facts and evidence otherwise related to the confirmation process and asset sale. Thus, the Court correctly held that Giese's causes of action shared identity with the claims available to his predecessors during the bankruptcy case.

Accordingly, all of the elements of res judicata existed. The orders confirming plan and approving the relevant sales disposed of the issues Giese raises, and he could not re-litigate them in the underlying case or in this appeal. The Bankruptcy Court's orders provided extensive protection for purchasers like Lexington Coal. The orders made it clear Lexington Coal was a good faith purchaser that took the Account free of any encumbrances. The orders also made it clear Lexington Coal assumed no liability regarding and was not liable for any previously existing obligations connected to the Account.

Any lingering question regarding ownership of the funds in the Account was definitively answered in the 2006 interpleader adversary proceeding commenced by Community Trust, when Giese's predecessors in interest, E. Begley's heirs, had another opportunity to assert an interest

in the Account but did not.  Giese does not contest that the first, second and fourth elements of res judicata are met by the default judgment in that adversary proceeding.  He contests only the third element.  In his reply brief, Giese claims that his predecessors-in-interest could not have brought the claims at issue because notice to the non-leasing heirs was not sufficient and therefore, they did not have an opportunity to be heard.  But Giese fails to elaborate on his theory and cites no authority to support it.  "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[.]'"  *United States v. Layne*, 192 F. 3d 556, 566 (6th Cir. 1999) (citation omitted).  Even if the argument was not deemed waived, it has no merit.  Community Trust had no knowledge of the identity or whereabouts of E. Begley.  Any interest in the Account held by the non-leasing heirs flowed from E. Begley.  How else would those who might have an interest in the Account be served other than by publication directed to the only name other than Leslie Resources associated with the Account?  This is the very purpose of service by publication.  The question is whether "notice [was] reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950) (citations omitted).  In the particular circumstances presented in the interpleader adversary proceeding, it was.[1]  Thus, the default judgment extinguishing any interest in the Account other than those of Lexington Coal and ICG operates as res judicata barring Giese's claims.

For all of these reasons, the Panel affirms the Bankruptcy Court's decision dismissing Giese's adversary proceeding.

## CONCLUSION

The Bankruptcy Court was not required to abstain from adjudicating Giese's causes of action or to remand same to the appropriate state court.  The Panel finds no error with the Bankruptcy Court's determination that it had jurisdiction over the claims raised in Giese's

---

[1]In actuality, because Giese failed to develop his argument on this point, it is not clear if he is asserting that service by publication was not an option available to Community Trust for service of process, or that the circumstances did not qualify for such service, or that the content of the publication was not sufficient, or some other insufficiency.  But the Panel notes that service by publication was properly authorized in adversary proceedings in bankruptcy court under Federal Rule of Bankruptcy Procedure 7004(c) (2006).

adversary case and its decision to adjudicate those claims. Accordingly, the Bankruptcy Court's Memorandum Opinion and Order denying the request for remand to the state court is AFFIRMED.

Additionally, the Bankruptcy Court did not err in entering its opinion and judgment dismissing Giese's complaint on the basis that res judicata barred Giese's claim. The Bankruptcy Court's Order Granting Judgment Dismissing Complaint as to Community Trust Bank and Lexington Coal Company, LLC is AFFIRMED.